IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-01499-ZLW-KMT

SHAABAN SHAABAN HAFED,

      Plaintiff,

v.

FEDERAL BUREAU OF PRISONS,
MICHAEL MUKASEY,
HARLEY LAPPIN,
RON WILEY, and
ROD BAUER,
sued in their official capacities,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Magistrate Judge Kathleen M. Tafoya**

      This case involves claims that Defendants violated Plaintiff's First, Fourth, Fifth, Sixth, and Eighth Amendment rights.  This matter is before the court on "Defendants' Motion to Dismiss Plaintiff's Claims with Prejudice for Failure to Comply with the Court Order to Provide His Deposition" (Doc. No. 316) filed April 1, 2009.

### BACKGROUND

      Following is a summary of the case taken from the Recommendation of United States Magistrate Judge regarding "Defendants' Partial Motion to Dismiss Plaintiff's First Amended Complaint" filed on March 6, 2009:

      Plaintiff is a prisoner in the custody of the Federal Bureau of Prisons ("FOB").  (Pl.'s First Am. Compl. ¶ 2 [hereinafter "Am. Compl."] [filed Aug. 4,

2008].)  In May 2006, Plaintiff was sentenced to 160 months of confinement.  (*Id.* ¶ 10.)  Plaintiff was convicted of conspiring to act and acting as a foreign agent of the government of Iraq without notifying the Attorney General, in violation of 18 U.S.C. §§ 371 and 951(a); traveling to Iraq in violation of the International Emergency Economic Powers Act, 50 U.S.C. § 1701; procuring an Indiana commercial driver's license and American citizenship by fraud, in violation of 18 U.S.C. §§ 1028(a)(1) and 1425(a); and tampering with a witness, in violation of 18 U.S.C. § 1512(b)(1).  (Mot. at 2-3).[1]  Plaintiff was placed at the United States Penitentiary Administrative Maximum ("ADX"), and Special Administrative Measures ("SAMs") were imposed on him.  (Am. Compl.  ¶ 11.)

SAMs are special restrictions that may be imposed when determined to be "reasonably necessary to protect persons against the risk of death or serious bodily injury."  28 C.F.R. § 501.3(a) (2007).  These SAMs may include housing the inmate in administrative detention and/or limiting certain privileges, including, but not limited to, correspondence, visiting, interviews with representatives of the news media, and use of the telephone, as is reasonably necessary to protect persons against the risk of acts of violence or terrorism.  *Id.*  SAMs can be imposed initially for only one year, but may be extended upon a sufficient showing of danger.  § 501.3(c).

Plaintiff has been placed in ADX with SAMs since June of 2006.  (Am. Compl. ¶ 13.)  Plaintiff asserts that on April 24, 2007, Defendant Wiley recommended that Plaintiff's SAMs be renewed for an additional one-year period of time based on information of Plaintiff's proclivity for violence.  (*Id.*)  Plaintiff's SAMs were again renewed for a period of one year in June 2008.  (*Id.*)  Plaintiff asserts Defendants Lappin, Wiley, and Mukasey "intend to renew Mr. Hafed's SAMs each and every year throughout the duration of his thirteen and a half year sentence."  (*Id.* ¶ 16.)

Plaintiff alleges he has never received notice of the factual basis allegedly supporting the imposition of the SAMs and has never been provided an opportunity to challenge the alleged factual basis.  (*Id.* ¶ 18.)  Plaintiff avers he has no history showing a proclivity to violence, and, therefore, there is no reasonable basis to conclude there exists a substantial risk his communication or contact with others could result in death or serious bodily injury to persons.  (*Id.*)  Plaintiff states the SAMs are atypical and a significant hardship on him.  (*Id.*)  He alleges the SAMs restrict his access to mail, telephone, visitors, and publications; prohibit him from communicating with other prisoners; and limit his communications with his family.  (*Id.* ¶ 20.)  He asserts non-legal mail is

---

[1]The charges and convictions for which Plaintiff was sentenced are not reasonably subject to any dispute.

2

unreasonably delayed so it may be reviewed by the BOP and/or the FBI for SAMs violations, and if the government determines there is a violation the mail is not delivered.  (*Id.* ¶ 21.)  Plaintiff alleges mail to the court of appeals handling his criminal case and mail to his wife has not been delivered because of SAMs violations.  (*Id.*)  Plaintiff asserts the determination of a SAMs violation is "essentially unchallengeable since . . . the BOP does not have the authority to override decisions made by the FBI."  (*Id.*)

Plaintiff alleges the SAMs unreasonably restrict Mr. Hafed's ability to consult with and/or retain counsel, as he cannot communicate with any lawyer unless the lawyer acknowledges the SAMs restrictions.  (*Id.* ¶ 22.)  Plaintiff also alleges the SAMs prohibit him from communications with the media.  (*Id.* ¶ 23.)

Finally, Plaintiff states he has numerous medical conditions for which he is receiving six to eight different medications a day.  (*Id.* ¶ 25.)  Plaintiff asserts the combination of medications "has the potential to cause, and is causing, severe side-effects including acute fatigue, restlessness, malaise, marked irritability, weakness, and decreased effectiveness of blood pressure medications."  (*Id.*)  Plaintiff alleges the medications are not effective in reducing his blood pressure, but Defendant Bauer will not provide him with alternative medications or other relief from his life-threatening conditions.  (*Id.* ¶¶ 26–27.)  Plaintiff asserts Defendant Bauer is aware of and deliberately indifferent to the unreasonable and significant risk that the combination of prescribed medications is causing.  (*Id.* ¶ 29.)

Plaintiff has named as defendants the Federal Bureau of Prisons; Michael Mukasey, the then-United States Attorney General; Harley Lappin, the Director of the BOP; Ronald Wiley, Warden of ADX; and Ron Bauer, the Health Services Administrator at ADX.  (*Id.* at 1–2.) Plaintiff asserts claims that the SAMs violate his First Amendment rights (*id.* ¶¶ 30–33); his Fourth Amendment right to be free from unreasonable search and seizure (*id.* ¶¶ 34–36); his Fifth Amendment rights to procedural due process and equal protection (*id.* ¶¶ 37–39); his Sixth Amendment right to counsel (*id.* ¶¶ 40–42); and his Eighth Amendment right prohibiting cruel and unusual punishment (*id.* ¶¶ 43–45).  Plaintiff seeks injunctive relief.  (*Id.* at 9.)

Defendants have filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) on the bases that (1) Plaintiff's procedural due process claim should be dismissed because an appropriate level of process is provided by the BOP Administrative Remedy Program; (2) Plaintiff cannot establish a viable equal protection claim because he has not alleged facts to show his is similarly situated to non-SAMs ADX inmates ; (3) the SAMs do not interfere with any constitutionally-protected right to counsel; (4) the SAMs do not subject Plaintiff to unreasonable search and seizure and have not deprived him of access to the courts; and (5) Plaintiff fails to state a claim for deliberate indifference to his

medical needs.  (Defs.' Partial Mot. to Dismiss Pl.'s First Am. Compl.
[hereinafter "Mot."] [filed Aug. 24, 2008].)

(Doc. No. 274 at 1–5.)  The court recommended that Defendants' motion to dismiss be granted

in part and denied in part.  (*Id.* at 25.)

Defendants now seek dismissal of Plaintiff's claims with prejudice for his failure to

comply with this court's order that he attend his deposition.  Defendants first noticed Plaintiff's

deposition for January 28, 2009.  (Mot. at 2.)  On January 28, 2009, defense counsel traveled to

the United States Penitentiary - Administrative Maximum in Florence, Colorado ("ADX"), along

with a court reporter, to take and record the deposition.  (*Id.*)  On January 28, 2009, Plaintiff

refused to participate in his deposition.  (*Id.*)  Plaintiff questioned the identity and credentials of

defense counsel and also claimed to require the assistance of counsel and an interpreter before

the deposition could proceed.  (*Id.*)  Defendants contacted this court, which conducted an

emergency telephonic discovery hearing.  (*See* Doc. No. 236.)

In response to Plaintiff's objection to the deposition being held based on his alleged

inability to obtain counsel, the Federal Bureau of Prisons ("BOP") counsel and defense counsel

explained to Plaintiff how an inmate subject to SAMs can seek to communicate with potential

retained counsel.  (Mot. at 3.)  This court ordered defense counsel to file a written status report

by February 23, 2009, advising the court of the status of Plaintiff's attempts to use the SAMs

procedures to communicate with possible counsel.  (*See* Doc. No. 236.)  The court also

specifically reminded Plaintiff of the consequences of his previous decision to fire his

court-appointed counsel, i.e., that the court would not appoint new counsel to represent Plaintiff

4

in this matter.  (*See* Doc. 175.)  The court informed the parties that the deposition would be
continued to March 24, 2009, in order to provide Defendants additional time to properly notice
the deposition and to allow Plaintiff additional time to obtain retained counsel.  (Doc. No. 236.)
Plaintiff was ordered to inform any counsel he might obtain of the scheduled deposition and that
if no entry of appearance was filed on behalf of Plaintiff by March 23, 2009, the Plaintiff would
be required to appear pro se at his deposition.  (Doc. No. 236.)  Plaintiff was advised of the
possibility of dismissal this action pursuant to Fed. R. Civ. P. 37 if he failed to obey the court's
order and attend the deposition.  (*Id.*)  Defendants formally noticed the March 24, 2009,
deposition on January 29, 2009, and hand-delivered to Plaintiff a copy of the Notice To Take
Deposition.  (Mot. at 2–3; *see also* Doc. No. 232.)

On February 6, 2009, Plaintiff's SAMs were modified to allow him to communicate with
five attorneys selected by Plaintiff.  (*See* Doc. 253.)  Plaintiff's correspondence to the five
attorneys whom he selected was reviewed in connection with the SAMs procedures and then
mailed on February 20, 2009.  (*Id.*)  To date, no attorney has entered an appearance on behalf of
Plaintiff.

Defendants assert that in the days leading to the scheduled deposition, Plaintiff
repeatedly suggested he was not inclined to submit to the deposition.  (Mot. 4.)  Indeed, on
February 20, 2009, Plaintiff filed a "Motion for Written Deposition Instead of Oral Examination
Because of Extraordinary Circumstances."  (Doc. No. 257.)  The court struck this motion on
March 3, 2009, for Plaintiff's failure to comply with the conferral requirement set forth in
D.C.COLO.LCivR 7.1A.  (Doc. No. 270.)  On March 12, 2009, Plaintiff filed a "Motion for

Reschedule the Deposition of Plaintiff's [sic] in the Interest of Justice and the 14th Amendment U.S. Constitution." (Doc. No. 280.) Plaintiff claimed that a hearing in another matter in an Indiana state court conflicted with the March 24, 2009, deposition date. (*Id.* at 4.) Defendants state the hearing in the Indiana matter was rescheduled to April 28, 2009. (Mot. at 4, Ex. A-2.) This court denied Plaintiff's motion to reschedule the deposition on March 16, 2009 for Plaintiff's failure to comply with the conferral requirement set forth in D.C.COLO.LCivR 7.1A. (Doc. No. 284.)

On March 24, 2009, defense counsel and a court reporter drove separately to ADX—a round-trip of more than 200 miles—for the court-ordered deposition of Plaintiff. (Mot. at 5.) At approximately 8:10 a.m., twenty minutes before the deposition was to begin, defense counsel was informed by BOP legal staff that Plaintiff had written a note moments earlier in which he claimed to have a sore throat that rendered him unable to speak. (*Id.*) BOP medical personnel immediately reported to Plaintiff's cell to conduct a physical examination of Plaintiff. (*Id.*) Nona Gladbach, a BOP nurse practitioner, performed vital signs and made an assessment of Plaintiff. (Mot. at 5, Ex. A-3, p. 7, ll. 3-4. Plaintiff had no elevated temperature. (*Id.* at l. 5.) He had no enlarged cervical nodes that would indicate a throat infection. (*Id.* at ll. 6–7.) Plaintiff verbally told Ms. Gladbach that he was not able to talk. (*Id.* at ll. 24–25.) Plaintiff resisted Ms. Gladbach's attempts to visually examine his throat, and Ms. Gladbach stated that Plaintiff pulled away from her "at least ten times, prior to actually being able to visualize his throat." (*Id.* at ll. 8–11.) When Plaintiff finally allowed Ms. Gladbach to see his throat, Ms. Gladbach found no indication of a throat infection and stated, "When I saw his throat, the skin was pink.  It was not

6

red, like an infection would often indicate, nor did I see any exudate." (*Id.* at ll. 12–13.) "Exudate" is pus on the tonsils or on the throat. (*Id.* at ll. 17-18.) Plaintiff's pulse was slightly elevated. (*Id.* at l. 21.) Plaintiff indicated he had not been drinking water, but declined to tell Ms. Gladbach how long he had gone without drinking. (*Id.* at ll. 23–24.) According to Ms. Gladbach, "it appeared that there was no infection at all of his throat." (*Id.* at p. 8, ll. 2–3.) In Ms. Gladbach's medical opinion, based on her observation of Plaintiff, there was no reason for Plaintiff to be unable to speak on the morning of March 24, 2009. (*Id.* at ll. 4–11.)

According to Defendants, following Ms. Gladbach's examination of Plaintiff, Plaintiff was given yet another opportunity to attend the court-ordered deposition, but he still refused. (Mot. at 6.) BOP Attorney Advisor Benjamin Brieschke went to Plaintiff's cell to ask whether Plaintiff intended to participate in his deposition. (*Id.* at p. 8, l. 24– p. 9, l. 3.) Plaintiff indicated that the Assistant United States Attorney could come to his cell, where he would write answers to her questions—a procedure not contemplated by the Federal Rules of Civil Procedure and a logistical impossibility in the Special Security Unit at ADX. (*Id.* at ll. 4–6; 10–13.) Mr. Brieschke informed Plaintiff that he should report to the area where the deposition was to take place to make a record of any issues or concerns he had. (*Id.* at 18–21.) Plaintiff declined to come to the deposition room to make a formal record of his purported illness. (*Id.* at ll. 21–23.)

In response to Defendants' current motion to dismiss, Plaintiff asserts "[t]he deposition in this case cannot be productive or has [sic] any positive or negative results to this case, just a routine act which waste less of Government's money and time by ineffective defendants' attorney. . . ." (Resp. at 6–7.) Plaintiff claims he "remembered that on [the] same day of [the]

7

deposition he had a hearing in the county court in Indianapolis - Indiana" and that he filed two motions to reset the deposition due to the hearing. (*Id.* at 8.) Plaintiff states he continued to prepare for his deposition after the court struck his motions to continue. (*Id.*) Plaintiff states he tried to find an attorney, but the prison authorities allowed him to communicate with only five attorneys. (*Id.* at 9.) Plaintiff states on Saturday, March 21, 2009, he "felt sick in his throat," and on Sunday, March 22, 2009, he could not talk. (*Id.*) Plaintiff states he "called the emergency at 2:00 p.m. on 3/22/09" but did not get a response. (*Id.* at 10.) He states he sent another request for emergency help on March 23, but got no response. (*Id.*) Plaintiff contends that Ms. Gladbach, who examined him on March 24, "is a nurse not a physician and not a specialist in throat diseases" and that she examined him in his cell "in not good lighted, without any medical equipment or instruments." (*Id.*) Plaintiff contends Ms. Gladbach asked him to open his mouth, "stuck a plastic dirty thing, look like a pen in his mouth which was painful, and that was the only examination, no temperature, but the voice lost she did not say nothing." (*Id.*) Plaintiff states he "is not need to fake his illness to avoid deposition." (*Id.* at 11.)

## PROCEDURAL HISTORY

Defendants filed their motion to dismiss on April 1, 2009. (Doc. No. 316 [hereinafter "Mot."].) Plaintiff filed his response on April 20, 2009. (Doc. No. 348 [hereinafter "Resp."].) Defendants filed their reply on May 5, 2009. (Doc. No. 368 [hereinafter "Reply"].) This matter is ripe for review and recommendation.

## ANALYSIS

Fed. R. Civ. P. 37(b)(2)(A)(v) permits a court to dismiss an action where a party "fails to obey an order to provide or permit discovery . . . ."  In *Ehrenhaus v. Reynolds*, 965 F.2d 916 (10th Cir. 1992), the Tenth Circuit enumerated the factors to be considered when evaluating grounds for dismissal of an action.  The factors are: "(1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; . . . (3) the culpability of the litigant, (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance, and (5) the efficacy of lesser sanctions."  *Ehrenhaus*, 965 F.2d at 921 (internal quotations and citations omitted); *see also Gates Rubber Co. v. Bando Chemical Industries, Ltd.*, 167 F.R.D. 90, 101 (D. Colo. 1996).  "A district court should ordinarily consider and address all of the above factors before imposing dismissal as a sanction. However, often some of these factors will take on more importance than others."  *Ehrenhaus* at 922.

### A.      *Prejudice to Defendants*

Defendants argue they have incurred additional expenses in connection with Plaintiff's deliberate refusal to comply with the court's order to provide his deposition.  Defense counsel and a court reporter have driven separately to ADX on two occasions to take and record Plaintiff's deposition.  Defense counsel has prepared twice for Plaintiff's deposition.  Defendants argue that, due to Plaintiff's willful refusal to participate in the discovery process, defense counsel has had to file additional pleadings with this court.  Defendants state that Plaintiff's conduct has interfered with the orderly operation of the prison and that ADX twice has

committed staffing resources to accommodate Plaintiff's deposition.  Defendants contend they have been prevented from obtaining the only discovery they sought in this case and that they will not be able to issue follow-up discovery requests prior to the discovery deadline. Defendants argue that Plaintiff's conduct has prevented the progress of this case and that his actions make clear that he does not intend to provide his deposition under any circumstances, and that he will endlessly thwart Defendants' attempts to depose him.

The *Ehrenhaus* court mentions both delay and mounting fees as being prejudicial to the party seeking discovery.  965 F.2d at 921.  Both of these factors are certainly present here.  The court concludes that Plaintiff has willfully and deliberately refused to comply with this court's order to attend his deposition and that his conduct has prejudiced the defendants.

### B.    *Interference with the Judicial Process*

Plaintiff has willfully and deliberately violated this court's order to attend his deposition. The court also notes Plaintiff has repeatedly ignored other court orders and thereby hindered the court's management of its docket and its effort to avoid unnecessary burdens on the court and on the judicial process.  *See Jones v. Thompson*, 996 F.2d 261, 265 (10th Cir.1993).  The plaintiff has demonstrated time and again that he has no respect for the judicial process and continues to flout the court's authority.  He refuses to follow even the simplest of procedural rules, including conferring with opposing counsel prior to filing motions.  *See Ehrenhaus*, 965 F.2d at 921 (affirming dismissal of plaintiff's action in part because the plaintiff, by wilfully failing to comply with the court's orders, "flouted the court's authority").  The court concludes, therefore, that there has been a substantial interference with the judicial process.  There is no greater

interference with the judicial process than willfully disobeying a court order. *See Adolph Coors Co. v. American Ins. Co.*, 164 F.R.D. 507, 520 (D. Colo. 1993).  If Plaintiff is allowed to continue in the same vein, unsanctioned, administration of any type of orderly justice would be impossible. *Id.* (citing *Ehrenhaus*, 965 F.2d at 921).  Otherwise, the sort of conduct chronicled herein would inevitably be tacitly encouraged. *Id.*

### C.      Culpability of the Plaintiff

The court, during the emergency hearing and in a written order, provided Plaintiff with a clear and simple directive to attend his deposition.  Nevertheless, the plaintiff, failed to do so.  Plaintiff's explanation is incredible.  He has without any reasonable excuse disobeyed this court's order to attend his deposition.  In addition, Plaintiff has chosen to proceed *pro se*, after having summarily fired the *pro bono* counsel the court obtained to represent him, and therefore has no one to blame but himself.  This court concludes that Plaintiff is willfully responsible for his noncompliance.

### D.      Advance Notice of Sanction of Dismissal for Noncompliance

Plaintiff was twice warned, during the emergency hearing and in the court's written order following the hearing, that his failure to attend his deposition could result in dismissal of his case.  Additionally, Plaintiff has had an opportunity to review and respond to Defendants' latest motion, which is the subject of this recommendation.  Despite these warnings, the plaintiff willfully disobeyed this court's order to attend his deposition.  Therefore, the court concludes that Plaintiff has had a sufficient warning, and the requirements of due process have been satisfied. *See Ehrenhaus*, 965 F.2d at 921.

### E.      Efficacy of a Lesser Sanction

Finally, the court concludes that no sanction less than dismissal would be effective. The Plaintiff is proceeding *in forma pauperis;* consequently, a monetary sanction would be ineffective. His conduct demonstrates a lack of respect for the court and the judicial system. Dismissal with prejudice is the only effective sanction.

WHEREFORE, for the foregoing reasons, the court respectfully

**RECOMMENDS** that "Defendants' Motion to Dismiss Plaintiff's Claims with Prejudice for Failure to Comply with the Court Order to Provide His Deposition" (Doc. No. 316) be GRANTED, and that this matter be dismissed in its entirety, with prejudice.

## ADVISEMENT TO THE PARTIES

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a

12

judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the Magistrate Judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc*., 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 13th day of May, 2009.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge