IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Zita L. Weinshienk

Civil Action No.  07-cv-01499-ZLW-BNB

SHAABAN SHAABAN HAFED,

     Plaintiff,
v.

FEDERAL BUREAU OF PRISONS;
MICHAEL MUKASEY;
HARLEY LAPPIN;
RON WILEY; and
ROD BAUER, sued in their official capacities,

     Defendants.
_____

ORDER OF DISMISSAL WITH PREJUDICE
_____

The matter before the Court is Defendants' Motion To Dismiss Plaintiff's Claims With Prejudice For Failure To Comply With The Court Order To Provide His Deposition (Motion To Dismiss) (Doc. No. 316).  The motion was referred to Magistrate Judge Kathleen M. Tafoya pursuant to D.C.COLO.LCivR 72.1C, and on May 13, 2009, the Magistrate Judge issued a Recommendation Of United States Magistrate Judge recommending that the Motion To Dismiss be granted.  On May 27, 2009, Plaintiff filed an "Objection To Stupid Recommendation Of Bias And Prejudice And Unqualify Magistrate Judge To Dismiss This Action With Prejudice" (Doc. No. 382).  Defendants filed a response to Plaintiff's objection on June 3, 2009, and a supplement to that response on June 12, 2009 (Doc. Nos. 386, 389).  Plaintiff filed a reply to Defendants' response on June 22, 2009 (Doc. No. 391), and then filed a second objection to the

Magistrate Judge's Recommendation on June 29, 2009 (Doc. No. 395).[1] The Court reviews *de novo* those portions of the Magistrate Judge's Recommendation to which Plaintiff has timely and specifically objected.[2] Plaintiff's second objection (Doc. No. 395) was not timely filed,[3] but the Court nonetheless has considered it. In addition, the Court has construed Plaintiff's pleadings and papers liberally because he is proceeding *pro se*.[4]

**A.   Background**

Plaintiff is a federal prisoner incarcerated in the United States Penitentiary Administrative Maximum (ADX) in Florence, Colorado following conviction on charges of conspiring to act and acting as a foreign agent of the government of Iraq without notifying the Attorney General in violation of 18 U.S.C. §§ 371 and 951(a); traveling to Iraq in violation of the International Emergency Economic Powers Act, 50 U.S.C. § 1701; procuring an Indiana commercial driver's license and American citizenship by fraud in violation of 18 U.S.C. §§ 1028(a)(1) and 1425(a); and tampering with a witness in violation of 18 U.S.C. § 1512(b)(1). The Federal Bureau of Prisons (BOP) imposed

---

[1] Plaintiff also filed a document entitled "Motion To Stop Lies And Cheatings Of Justice (In Response To Reply To The Dkt No 348)" on May 19, 2009 (Doc. No. 379). Although this filing was docketed by the Court Clerk as a an objection to a Magistrate Judge's Recommendation, in substance it appears to be a sur-reply on Defendants' Motion To Dismiss.

[2] See 28 U.S.C. § 636(b)(1); United States v. One Parcel of Real Property, 73 F.3d 1057, 1059 (10th Cir. 1996) (court's *de novo* review is limited to "any portion of the magistrate judge's disposition to which specific written objection has been made. . . .").

[3] See 28 U.S.C. § 636(b)(1) (written objection to Magistrate Judge's recommendation must be filed within ten days after service of the recommendation).

[4] See Trackwell v. United States Government, 472 F.3d 1242, 1243 (10th Cir. 2007).

Special Administrative Measures (SAMs) upon Plaintiff at the direction of the United States Attorney's Office.  SAMs may be imposed upon a prisoner where there exists a "substantial risk that a prisoner's communications or contacts with persons could result in death or serious bodily injury to persons, or substantial damage to property that would entail the risk of death or serious bodily injury to persons."[5]  SAMs restrictions may include "housing the inmate in administrative detention and/or limiting certain privileges, including, but not limited to, correspondence, visiting, interviews with representatives of the news media, and use of the telephone, as is reasonably necessary to protect persons against the risk of acts of violence or terrorism."[6]  Plaintiff filed his First Amended Complaint on August 4, 2008, alleging violations of the First, Fourth, Fifth, Sixth, and Eighth Amendments to the United States Constitution stemming primarily from the imposition of SAMs upon him.  In addition to the BOP, Plaintiff has named former United States Attorney General Michael Mukasey, Director of BOP Harley Lappin, ADX Warden Ronald Wiley, and ADX Health Services Administrator Ron Bauer as Defendants.

Defendants now move to dismiss this action with prejudice pursuant to Fed. R. Civ. P. 37(b)(2)(A)(v) based on Plaintiff's alleged willful failure to participate in his deposition in violation of a Court Order.  Defendants first noticed Plaintiff's deposition for January 28, 2009.  Defendants' counsel and a court reporter traveled to

---

[5] 28 C.F.R. § 501.3(a).

[6] Id.

ADX on that date, a trip of more than 200 miles round trip.  Plaintiff, however, refused to participate in the deposition, asserting that he needed a translator, although he had communicated previously with the Court and opposing counsel in English, and that he also needed to obtain counsel, although he had previously terminated his Court-appointed counsel, informed the Court that he wished to represent himself, and not sought to obtain new counsel.[7]  Plaintiff also asserted that he had received no notice of the deposition.[8]

Upon Plaintiff's refusal to submit to the deposition, Plaintiff and Defendants' counsel called the Court by telephone, and Magistrate Judge Tafoya conducted a telephonic hearing.  As reflected in the Courtroom Minutes/Minute Order of January 28, 2009 (Doc. No. 236), Magistrate Judge Tafoya found that the deposition notice, issued seven days before the deposition, was inadequate given the restrictions placed on Plaintiff.  The Magistrate Judge ordered that Plaintiff's deposition was continued to March 24, 2009, at 8:30 a.m., ordered Plaintiff to appear for that deposition, and warned him that his case could be dismissed if he failed to do so.  The March 24, 2009, Courtroom Minutes/Minute Order expressly state that "Plaintiff is ordered to attend the deposition and advised of possibility of dismissal of this action pursuant to Rule 37 is he fails to obey the Court's order."[9]  According to Defendants, Defendants' counsel

---

[7]See Motion To Dismiss (Doc. No. 316) Ex. A-3 at 4; see also Plaintiff's Motion To Allow Plaintiff To Represent Himself . . .  (Doc. No. 149).

[8]January 28, 2009, Courtroom Minutes/Minute Order (Doc. No. 236) at 1.

[9]Id.

4

explained to Plaintiff how to seek to communicate with potential counsel under SAMs, and the Court reminded Plaintiff that no new counsel would be appointed for him by the Court.[10]  The Magistrate Judge ordered that Defendants' counsel file a status report by February 23, 2009, advising the Court of the status of Plaintiff's attempts to use the SAMs procedures to communicate with potential counsel.[11]  The Magistrate Judge extended the discovery deadline to April 20, 2009, and the dispositive motions deadline to May 20, 2009.[12]

Defendants' counsel filed a status report on February 20, 2009, advising the Court that Plaintiff's SAMs had been modified to allow him to communicate with five potential attorneys.[13]  Plaintiff's correspondence to the five attorneys was mailed to the attorneys on February 20, 2009.[14]  As of April 1, 2009, when Defendants filed their Motion To Dismiss, none of the five attorneys apparently had indicated that they were willing to represent Plaintiff.[15]

On February 20, 2009, Plaintiff filed a "Motion For Written Deposition Instead Of Oral Examination Because Of Extraordinary Circumstances" (Doc. No. 254).  Plaintiff asserted that he could not sit comfortably in the ADX for an oral deposition but could do

---

[10]See Motion To Dismiss (Doc. No. 316) at 3.

[11]January 28, 2009, Courtroom Minutes/Minute Order (Doc. No. 236) at 1.

[12]Id. at 2.

[13]See Status report Submitted Pursuant To the Court's Order Of January 28, 2009 (Doc. No. 253).

[14]Id.

[15]See Motion To Dismiss (Doc. No. 316) at 4.

so at the courthouse in Denver, suggesting, alternatively, that he would be willing to be deposed by written questions.  The Magistrate Judge struck the motion for Plaintiff's failure to comply with D.C.COLO.L.CivR 7.1A.  (Doc. No. 270).  Then, on March 12, 2009, Plaintiff filed a "Motion For Reschedule The Deposition Of Plaintiff's In The Interest Of Justice And The 14th Amendment U.S. Constitution" (Doc. No. 280), requesting rescheduling of the deposition because a hearing was scheduled on the same day in another civil case filed by Plaintiff in state court in Indiana.  However, the Indiana court in fact had rescheduled the hearing more than two weeks before Plaintiff filed his motion, and thus there was no scheduling conflict.[16]  The Magistrate Judge denied Plaintiff's motion based on Plaintiff's failure to comply with D.C.COLO.L.CivR 7.1A.  (Doc. No. 284).

Defendants' counsel appeared at ADX for the second scheduled deposition on March 24, 2009.  Upon arrival, counsel was informed by BOP personnel that Plaintiff was refusing to leave his cell for the deposition, claiming that he had laryngitis.[17]  Plaintiff was examined by nurse practitioner Nona Gladbach, a member of the ADX medical staff.  Plaintiff was very resistant to Gladbach's attempts to examine his throat, pulling away from her at least ten times before Gladbach could actually visualize his throat.  When she was finally able to examine Plaintiff's throat, she noted that his throat was pink, not red, and that a red throat would commonly indicate infection.  She saw no

---

[16] See id. Ex. A-2..

[17] See Motion To Dismiss (Doc. No. 316) Ex. A-3 at 6.

6

pus on Plaintiff's tonsils or throat.  Plaintiff did not have an elevated temperature and there were no enlarged cervical nodes on his throat which would indicate a throat infection.  The rest of the examination was normal.  Gladbach testified under oath that it appeared that there was no infection at all in Plaintiff's throat, and that, in her medical opinion, there was no reason why Plaintiff would not be able to speak.  In fact, when Gladbach asked Plaintiff if he had been drinking water, Plaintiff *verbally* responded that he was not able to talk.[18]

BOP legal counsel Benjamin Brieschke testified that when he told Plaintiff on the morning of the deposition that it was time to leave his cell to attend the deposition, Plaintiff wrote a note stating that he was not able to talk but that if counsel was willing to come into his cell, he would write answers to written deposition questions.  Brieschke testified that there is no way, logistically, for a deposition to be taken in a cell in Plaintiff's unit at ADX.  Brieschke told Plaintiff that if he had a concern regarding the deposition he should come to the area where the deposition was to be taken and make his concern a part of the record, but Plaintiff declined to do so.[19]

**B.     Analysis**

Under Fed. R. Civ. P. 37(b)(2)(A)(v), the Court may dismiss the action in whole or part where a party "fails to obey an order to provide or permit discovery."  "Determination of the correct sanction for a discovery violation is a fact-specific inquiry

---

[18] Id. at 7.

[19] Id. at 8-9.

that the district court is best qualified to make."[20] "[D]ismissal represents an extreme sanction appropriate only in cases of willful misconduct,"[21] and, in <u>Ehrenhaus v. Reynolds</u>,[22] the United States Court of Appeals for the Tenth Circuit stated that district courts should consider the following factors before dismissing a case pursuant to Fed. R. Civ. P. 37(b)(2)(A)(v):  (1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions.[23]

### 1. Prejudice

Plaintiff's actions have prejudiced Defendants by requiring them to incur additional legal costs in connection with their unsuccessful attempts to take Plaintiff's deposition.  Even more importantly, both the discovery deadline and the dispositive motions deadline now have expired, and Plaintiff's conduct has prevented Defendants from obtaining the only discovery they have sought from Plaintiff prior to the expiration of those deadlines.  Plaintiff's conduct thus has caused substantial actual prejudice to Defendants.

### 2. Amount of Interference with the Judicial Process

---

[20] <u>Ehrenhaus v. Reynolds</u>, 965 F.2d 916, 920 (10th Cir. 1992).

[21] <u>Id.</u>

[22] <u>Id.</u>

[23] <u>Id.</u> at 221.

The Court agrees with Defendants that Plaintiff's unjustified and willful refusal to comply with the Magistrate Judge's Order to participate in his deposition must be viewed against the backdrop of Plaintiff's obstreperous conduct throughout this litigation.[24]  For example, on February 13, 2009, the Magistrate Judge expressly ordered Plaintiff to confer in good faith with opposing counsel in compliance with D.C.COLO.L.CivR 7.1A. with respect to any motion filed either by him or by Defendants.[25]  The Order specifically warned Plaintiff that under Fed. R. Civ. P. 37(b)(2)(A), sanctions for noncompliance with the Court's Order could include dismissal of the action with prejudice.[26]  Despite the Magistrate Judge's Order, Plaintiff repeatedly and without justification failed to comply with D.C.COLO.L.CivR 7.1A. on subsequent motions.  Plaintiff has contended that he does not have to comply with D.C.COLO.L.CivR 7.1A because the rule is unnecessary and unconstitutional, and because he is exempt from the rule as a prisoner.[27]  The Court must note that Plaintiff has filed more than 90 motions and objections in this case, almost all of which have been denied, stricken, or overruled.  Plaintiff has alleged that ADX staff intentionally

---

[24] Pro se litigants are required to follow the same rules of procedure, including local court rules, as those governing other litigants.  See Green v. Dorrell, 969 F.2d 915, 917 (10th Cir. 1992).

[25] February 13, 2009, Order (Doc. No. 248).

[26] Id.

[27] See Doc. No. 395 at 4-5; Doc. No. 348 at 4-5.

exposed him to tuberculosis,[28] that Defendants' counsel is engaged in "racial profiling,"[29] and that the Court is controlled by the F.B.I., the Department of Justice, and Defendants' attorneys, and is biased and prejudiced against him.[30]  Plaintiff sought the appointment of counsel, and then, after the Court appointed counsel, requested that the appointed counsel be terminated.  The Court granted Plaintiff's request and allowed the withdrawal of Plaintiff's counsel.  Plaintiff then proceeded to object to his deposition on the ground that he did not have counsel, even though he had not sought to retain new counsel.  Plaintiff's conduct in this case reflects an unwillingness to cooperate and follow the applicable rules.

Plaintiff's refusal to comply with the Magistrate Judge's Order that he submit to the March 24, 2009, deposition constitutes a significant interference with the judicial process.  Plaintiff's given excuse for not participating in the deposition - that he could not speak due to laryngitis - is not credible.  The nurse practitioner who examined him found no evidence of any throat irritation or infection.  Plaintiff attempted to thwart the nurse's attempts to examine him by pulling away from her approximately ten times before she was finally able to examine his throat.  Plaintiff *verbally* told the nurse that he could not speak, which immediately disproved his own assertion.  Plaintiff has submitted no evidence that he complained to anyone at ADX of his claimed laryngitis prior to the

---

[28] See Doc. No. 241 at 2.

[29] See Doc. No. 243 at 2.

[30] See Doc. No. 276, Doc. No. 395 at 5, and Doc. No. 382 at 4.

morning that his deposition was to commence.[31]  Plaintiff's desire to avoid the deposition is further evidenced by his February 20 and March 12, 2009, motions, as well as by his own stated opinion that his deposition would be a "waste of time" and would "not make big different [sic] in this case" because he would be testifying at trial anyway.[32]  Plaintiff states that "[t]he deposition in this case cannot be productive or has [sic] any positive or negative results to this case, just a routine act which was wasteless [sic] of Government's money and time by ineffective defendants' attorney and should not waste Taxpayers money for empty wasteless [sic] action."[33]  The Court can reach no conclusion other than that Plaintiff willfully refused to obey the Magistrate Judge's Order that he appear for his deposition without any credible justification.

Plaintiff requested that opposing counsel depose him in his cell, by written questions, a process that was not logistically feasible and is not contemplated by the Federal Rules of Civil Procedure.  Defendants' counsel is not required to submit to an unauthorized discovery procedure at Plaintiff's whim.  Plaintiff refused to explain his position concerning the deposition on the record on the day of the deposition, and has not expressed any willingness to cooperate with a potential further attempt at a deposition.  Defendants were entitled to take Plaintiff's deposition, and Plaintiff's willful obstruction of that right in defiance of a Court Order constitutes a direct and serious

---

[31]Plaintiff's two letters to ADX medical staff claiming a throat infection are dated March 27, 2009, and March 30, 2009, *after* the attempted deposition.  See Doc. No. 348 at 13-14.

[32]See Doc. No. 395 at 4; see also Doc. No. 382 at 3.

[33]Doc. No. 348 at 6-7.

11

interference with the judicial process.

### 3.     **Culpability of the Litigant**

Plaintiff is solely culpable for his unjustified refusal to comply with the Court's Order to cooperate with his deposition.  As discussed above, his asserted reason for refusing to participate in the deposition is not credible.  Although Plaintiff is not represented by counsel, Plaintiff is proceeding *pro se* in this case of his own volition; he rejected the attorneys appointed by the Court, informing the Court that he wished to represent himself, and has not retained anyone to replace them.  It was Plaintiff's choice alone to obstruct the deposition on March 24, 2009.

### 4.     **Advance Warning from the Court that Dismissal of the Action Would be a Likely Sanction for Noncompliance**

Magistrate Judge Tafoya warned Plaintiff orally at the telephone hearing on January 28, 2009, that if he failed to submit to the deposition on March 24, 2009, the action could be dismissed pursuant to Fed. R. Civ. P. 37.  The Court's written Courtroom Minutes/Minute Order issued that day and served upon Plaintiff reiterated that warning.  Plaintiff previously had been warned by the Court that his continued refusal to comply with D.C.COLO.L.CivR 7.1A could result in dismissal of his case.  Plaintiff was specifically, repeatedly, and adequately warned that his case could be dismissed if he did not comply with the Court's Orders.

### 5.     **The Efficacy of Lesser Sanctions**

Plaintiff has willfully disobeyed the Court's Order that he submit to a deposition,

has stated his position that his deposition is a "waste of time" and not necessary, and has made no indication that he will ever cooperate with a valid deposition notice or Court Order requiring his deposition.  Plaintiff is indigent and thus monetary sanctions would have no effect.  Plaintiff is already in custody, and thus contempt proceedings with the threat of incarceration would have no effect.  Plaintiff has flouted the authority of this Court and repeatedly expressed in both his actions and words his belief that the rules of this Court do not apply to him.  In view of Plaintiff's disrespect for federal court procedural rules and the authority of this Court, his non-credible excuse for refusing to be deposed on March 24, 2009, his asserted opinion that his deposition is not required in this case, his repeated prior attempts to avoid his deposition, his failure to state that he will ever submit to a deposition, his obstreperous conduct throughout this litigation, and the ineffectiveness of alternative sanctions, the Court concludes that dismissal is the only appropriate sanction under Fed. R. Civ. P. 37(b)(2)(A).

Considering all of the Ehrenhaus case factors together, for the reasons set forth above, dismissal of this action with prejudice is warranted.  Accordingly, the Court approves and adopts the May 13, 2009, Recommendation Of United States Magistrate Judge Tafoya, and it is

ORDERED that Defendants' Motion To Dismiss Plaintiff's Claims With Prejudice For Failure To Comply With The Court Order To Provide His Deposition (Doc. No. 316) is granted.  It is

FURTHER ORDERED that Plaintiff's First Amended Complaint and cause of

action are dismissed with prejudice, the parties to pay their own costs and attorney's fees.  It is

    FURTHER ORDERED that all other pending motions are denied as moot.  It is

    FURTHER ORDERED that a separate Judgment shall issue pursuant to Fed. R. Civ. P. 58(a).

    DATED at Denver, Colorado, this 5th day of August, 2009.

        BY THE COURT:

        *[signature: Zita L. Weinshienk]*

        _____

        ZITA L. WEINSHIENK, Senior Judge
        United States District Court